ROBERT COLEMAN, Plaintiff-Appellee, v. ANTHONY J. CALIENDO, Indiv. and d/b/a Wars of the World, Defendant-Appellant.

First District (4th Division)   No. 1—04—1804

Opinion filed October 27, 2005.

James M. Chesloe, Ltd., of Willow Springs (James M. Chesloe, of counsel), for appellant.

Schiffman & Jacobs, P.C., of Chicago (C. Corey and S. Berman, of counsel), for appellee.

JUSTICE MURPHY delivered the opinion of the court:

Defendant Anthony J. Caliendo appeals from an order of the circuit court vacating, under section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2002)), the dismissal for want of prosecution (DWP) of plaintiff Robert Coleman's civil action against him. Defendant contends on appeal that the trial court abused its discretion when it vacated the DWP, because plaintiff failed to state a meritorious claim and failed to demonstrate the requisite diligence to obtain relief under section 2—1401.

In December 1999, plaintiff filed a two-count civil action for fraud and punitive damages. He alleged that defendant, a dealer in war memorabilia, sold him various items of German World War II vintage between 1996 and August 1998. Plaintiff alleged that defendant represented the merchandise to be genuine war memorabilia rather than replicas. Plaintiff later discovered that the items were replicas. When plaintiff returned the items to defendant and requested a refund, defendant refused.

In his answer, defendant denied that the merchandise was not genuine and that he made any false representation to plaintiff. Defendant specifically averred that some of the appraisers engaged by plaintiff found the merchandise to be genuine. Defendant also argued that he sold the merchandise "as is," with a refund available only within 30 days of sale and with a receipt, and that plaintiff was denied a refund because he failed to comply with either condition.

The case proceeded through discovery, and a case management conference was set for July 29, 2002. When plaintiff's attorney did not attend the conference, the case was dismissed for want of prosecution on that date. Official "postcard" notice of the DWP was sent to "Marsh & Marsh, 48 W. Roosevelt, Lombard, IL 60148." Plaintiff's counsel at the time, Alan Katz, had provided either a Chicago or Skokie address on all court documents.

On February 11, 2004, plaintiff filed a section 2—1401 petition to vacate the DWP. Regarding the necessity of a meritorious claim, plaintiff stated that he had testified in his deposition that defendant knew he wanted to buy only genuine war memorabilia and represented that the merchandise sold to plaintiff was genuine. Plaintiff had also disclosed in discovery that three expert witnesses would testify that either all or a majority of the items they examined were replicas. He argued that he had stated valid claims of fraud and breach of implied warranty of merchantability, the latter being a new count that he would include in an amended complaint if the DWP was vacated.

Regarding his diligence concerning the DWP, plaintiff argued that sole practitioner Katz had undergone knee surgery on July 11, 2002, about two weeks before the DWP, and was unable to attend appointments for several weeks afterwards. Regarding plaintiff's diligence in seeking relief under section 2—1401, Katz's case file did not indicate that Katz had received postcard notice of the DWP, and Katz did not indicate to plaintiff that his case was dismissed or was otherwise delayed from its ordinary course. In November 2002, about three months after the DWP, Katz was diagnosed with colon cancer and underwent a long and painful course of treatment that ended with his death in November 2003. When plaintiff learned of Katz's death, he employed new counsel, who discovered the DWP and filed the instant section 2—1401 petition as soon as all the supporting affidavits were available.

The petition was supported by attached affidavits and exhibits. Katz's widow attested to Katz's surgery, postsurgical disability, and colon cancer. Plaintiff's new attorney attested that Katz's files did not include any notice or correspondence referring to the DWP, nor any indication that Katz was aware of the DWP. Plaintiff attested that Katz had never indicated to him that his case was doing anything but proceeding in due course. An excerpted copy of plaintiff's deposition was attached to the petition, as was a letter from one of plaintiff's expert witnesses describing how the items he examined were replicas.

Defendant responded to plaintiff's section 2—1401 petition. Defendant noted that, while an attorney's illness may justify his or her failure to comply with a court deadline or attend a hearing, the nature and timing of the illness are major factors in determining whether section 2—1401 relief is appropriate. Defendant argued that no evidence had been presented that Katz was ill on the day of the DWP, July 29, 2002, but only that he had knee surgery two weeks before the DWP and was diagnosed with cancer three months after the DWP. There was no affidavit from a physician or psychologist as to Katz' mental condition at the time of the DWP, or during his cancer

treatment, only "the self serving statements of the Plaintiff and Katz's wife." Defendant also argued that Katz's representation to plaintiff that his case was proceeding in a timely manner was insufficient to overcome plaintiff's duty to follow the progress of his case. Lastly, plaintiff did not state a meritorious claim for breach of implied warranty because the merchandise in question was sold "as is."

Plaintiff replied in support of his section 2—1401 petition. He argued that he had stated a meritorious case because the existence of an exception to the implied warranty of merchantability is a question of fact, while defendant offered no evidence that the merchandise was sold "as is." On the issue of diligence, plaintiff argued that the First District of this court applies a relaxed, equitable, standard to section 2—1401 petitions. Under this standard, the due diligence standard is relaxed, and relief is deemed appropriate where it would be unfair or unjust to have the case decided on a basis other than the merits. Plaintiff argued that equity required vacatur of the DWP because his case had proceeded through discovery and was on the verge of trial, because Katz's file included no indication of the DWP, and because Katz's solo practice meant that he had little ability to keep track of cases during periods of ill health.

Defendant filed a surreply, arguing that plaintiff had failed to show that the merchandise in question was not genuine. He also argued that, under equity, a relaxed approach to due diligence is appropriate only where the party seeking relief has "clean hands" and was not himself negligent. Since plaintiff was aware of Katz's illness, he was negligent in not keeping track of his case.

The circuit court held a hearing on the section 2—1401 petition on May 18, 2004. The court noted initially that the facts were "extreme" and that "basically I think Mr. Katz abandoned his client." Defendant demurred, arguing that there was no evidence that Katz was mentally impaired on the date of the DWP; that is, no justification for Katz's failure to attend the hearing that resulted in the DWP. Defendant also argued that plaintiff did not have "clean hands" for equitable purposes because he was aware of Katz's illness and therefore should have been keeping track of the case himself. Plaintiff responded that the instant case was well on course for trial at the time of the DWP and that he had stated a meritorious claim that should proceed to trial. The court noted plaintiff's affidavit that, while he knew Katz was ill, he did not know about the DWP and believed the case to be duly proceeding. Where "we've got a dead attorney who cannot tell us what *** was going on," and the "case had been prosecuted to the point of almost being ready for trial," the court stated that it was reluctant to "hang it on the client." The court concluded that "justice and fairness dictate[ ]

reopening this and letting the client have his day in court." The court therefore vacated the DWP. That same day, the court entered an order granting plaintiff's petition to vacate the DWP and striking defendant's surreply. This appeal timely followed.

Defendant contends that the trial court abused its discretion in granting plaintiff relief under section 2—1401 by vacating the DWP.

■ Code section 2—1401 provides that "[r]elief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition" "filed in the same proceeding in which the order or judgment was entered" and "supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2—1401(a), (b) (West 2002). To obtain relief under section 2—1401, a petitioner must set forth factual allegations supporting the existence of a meritorious defense or claim, due diligence in presenting this defense or claim in the original action, and due diligence in filing the section 2—1401 petition. *Dealer Management Systems, Inc. v. Design Automotive Group, Inc.*, 355 Ill. App. 3d 416, 419 (2005). A petition for relief from judgment invokes the trial court's equitable powers, which should prevent enforcement of a judgment when it would be unfair, unjust, or inequitable. *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 774 (2004). Therefore, " 'the current trend in Illinois *** [has] been to relax the due diligence standard where necessary to prevent the unjust entry of default judgments and to effect substantial justice.' " *In re County Treasurer*, 347 Ill. App. 3d at 774, quoting *Pirman v. A&M Cartage, Inc.*, 285 Ill. App. 3d 993, 1003 (1996).

> " 'The court must consider all the circumstances of the proceedings and liberally construe the scope of relief available to prevent an unjust result. [Citation.] The court will consider whether some meritorious position exists so that vacatur of the order will not be a useless act; whether some particular hardship will result from vacating the order; and whether some reasons exist for the failure to present a defense in apt time. [Citation.] These determinations must be made within the framework of the legal philosophy that litigation should be determined on its merits if possible and according to the substantive rights of the parties.' " *In re County Treasurer*, 347 Ill. App. 3d at 774, quoting *Zee Jay, Inc. v. Illinois Insurance Guaranty Fund*, 194 Ill. App. 3d 1098, 1102 (1990).

The decision to grant or deny a section 2—1401 petition is within the sound discretion of the trial court and will be reversed only when that discretion is abused. *Dealer Management Systems, Inc.*, 355 Ill. App. 3d at 419.

■ Here, defendant argues that plaintiff failed to state a meritorious claim. To prove the existence of a meritorious defense or claim, a

petitioner must not merely assert the existence of a meritorious defense or claim, but must plead sufficient supporting facts. *Beauchamp v. Zimmerman*, 359 Ill. App. 3d 143, 148 (2005). Plaintiff included with his section 2—1401 petition his deposition, in which he testified that defendant sold war memorabilia from a store as his full-time occupation for "a number of years" (thus supporting his claim that defendant was an expert on war memorabilia), that plaintiff had informed defendant "numerous times" that he wanted to buy only genuine war memorabilia rather than replicas, and that he solicited the opinions of three specific dealers in war memorabilia as to the authenticity of certain items purchased from defendant. Plaintiff also included the notarized opinion letter of one of the aforementioned dealers, describing in detail the items he examined as being replicas in whole or in part (for example, genuine badges sewn onto replica uniforms). On this record, we conclude that plaintiff averred sufficient facts to support the allegations of his complaint. We need not address whether defendant's allegation that the goods were sold "as is" defeats a potential claim of breach of implied warranty of merchantability because that claim has not yet been properly raised. Our task is confined to determining whether "plaintiff alleges sufficient facts to set forth a meritorious claim in the complaint" (*Beauchamp*, 359 Ill. App. 3d at 143), not evaluating claims not yet raised in an amended petition that does not yet exist.

On the dual issues of diligence—in the original proceeding and in seeking relief—defendant argues that the supporting affidavits are flawed because physicians should attest to illness and because there was no evidence that attorney Katz was ill on the day of the DWP. However, it is apparent from the record that the trial court did not grant relief on the specific basis of Katz's illness or his mental condition on the day of the DWP. Instead, the court concluded more generally that Katz had "abandoned" plaintiff while continuing to represent to him that the case was duly proceeding. The trial court did not specify why Katz had abandoned plaintiff, whether because he was ill or for improper reasons. As explained below, we similarly need not determine why Katz abandoned plaintiff.

In *Cohen v. Wood Brothers Steel Stamping Co.*, 227 Ill. App. 3d 354 (1991), this court reversed the trial court's denial of a plaintiff's section 2—1401 petition. While the trial court had found that plaintiff lacked diligence in pursuing his claim, we found that relaxation of the due diligence requirement was appropriate because we were presented with, "not a case of ordinary negligence, but an extraordinary situation where [an] attorney abruptly and unexplicably [*sic*] abandoned both his client and his law firm without attending court and without

adequately documenting the files for which he retained responsibility." *Cohen*, 227 Ill. App. 3d at 360. We found it unjust to force the *Cohen* plaintiff to suffer the "harsh results of such aberrant and unanticipated conduct on the part of his attorney." *Cohen*, 227 Ill. App. 3d at 360. Similarly, in the instant case, Katz inexplicably and abruptly—with discovery almost complete and trial looming—abandoned plaintiff. Following *Cohen*, the trial court here did not abuse its discretion when it vacated the DWP pursuant to plaintiff's section 2—1401 petition.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

QUINN, P.J. and CAMPBELL, J., concur.